IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CHRISTOPHER SUDA,

      Petitioner,

v.                                                                CASE NO. 4:09-cv-61-SPM-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, and is proceeding pursuant to a second amended petition, Doc. 21.[1]  The Respondent filed a response and an appendix with relevant portions of the state-court record, and Petitioner filed a reply and documents expanding the record.  Docs. 16, 38, 45, 46.  Upon due consideration of the Petition, the Response, the Reply, and the state-court record, as expanded, the undersigned recommends that the Petition be denied.[2]

## State-Court Proceedings

Petitioner was charged in Leon County with one count of trafficking in MDMA, in violation of Fla. Stat. § 893.135. App. exh. A.   Petitioner was found guilty following a trial, but his conviction was reversed on appeal and remanded for new trial. *Suda v.*

---

[1]Leave to amend the petition was granted on January 12, 2011.  Doc. 43.

[2]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

*State*, 838 So. 2d 665 (Fla. 1st DCA 2003).  Petitioner was retried and again found guilty. App. exh. H. (trial transcript). The primary evidence against Petitioner was the testimony of Steven Blake Hardin, who received MDMA from Petitioner to sell to others, and who served as a confidential informant following a raid at an apartment in Tallahassee where Hardin had received MDMA from Petitioner on April 27, 2001.  Other witnesses who were present on that date also implicated Petitioner in the delivery of MDMA to Hardin, including Justin Wainwright.  *See id*.

On April 5, 2004, the trial court adjudicated Petitioner guilty and sentenced him to ten years in prison, with a seven year minimum mandatory sentence. App. exh. F. The appellate court per curiam affirmed without opinion on April 27, 2005. App. exh. L; *Suda v. State*, 902 So. 2d 139 (Fla.1st DCA 2005) (Table).

On May 28, 2004, Petitioner filed a Motion to Reduce Sentence pursuant to Fla. R. Crim. P. 3.800(c). App. exh. O. On June 2, 2004, the trial court denied the motion. *Id.*

On April 6, 2006, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Rule 3.850. *Id*.; App. exh. V.  Four months later, on August 7, 2006, Petitioner, through counsel, filed another Rule 3.850 motion. *Id*.  On October 16, 2006, Petitioner, through counsel, filed a supplement in support of his August 7, 2006, motion. *Id*. On February 9, 2007, the trial court denied Petitioner's re-presented Rule 3.850 motion and supplement on the merits. *Id*. On February 20, 2007, Petitioner filed a *pro se* supplement to his *pro se* Rule 3.850 motion raising three additional grounds for relief. App. exh. V. On February 28, 2007, the trial court denied Petitioner's *pro se* Rule 3.850 motion and supplement. *Id*. The trial court found that the motion was an unauthorized *pro se* pleading because Petitioner was represented by counsel at the time of the filing.

*Id*.  The court went on, however, to reject each of Petitioner's postconviction claims on the merits. *Id*. Petitioner's claims in his *pro se* motion included an allegation that counsel, Mr. Weinberg, had rendered ineffective assistance during Petitioner's trial. *Id*. On March 16, 2007, Petitioner filed a *pro se* motion for rehearing, which the trial court denied on March 20, 2007. *Id*. On April 10, 2007, Petitioner, through counsel, filed a motion for reconsideration, which the trial court denied on April 20, 2007. *Id*.

On April 23, 2007, Petitioner, both *pro se* and through counsel, filed two appeals to the First District. App. exh. U; exh. V; *see also* exhs. P, Q, W. The cases were assigned different case numbers: 1D07-1218, which proceeded on counsel's 3.850 motion; and 1D08-294, which proceeded on the *pro se* 3.850 motion. On October 9, 2007, the First District per curiam affirmed in Case No. 1D07-1218, without opinion. App. exh. T; *Suda v. State*, 965 So. 2d 1146 (Fla. 1st DCA Oct. 9, 2007) (Table). On August 8, 2008, in Case No. 1D08-294, the First District per curiam affirmed without opinion. App. exh. Y; *Suda v. State*, 989 So. 2d 642 (Fla. 1st DCA Aug. 8, 2008) (Table).

On January 2, 2008, Petitioner filed another *pro se* motion for post-conviction relief pursuant to Rule 3.850. App. exh. JJ. Petitioner supplemented that motion on February 14, 2008. *Id*. On February 29, 2008, the court denied the motion. *Id*. On March 14, 2008, Petitioner filed a motion for rehearing, which was denied on March 31, 2008. *Id*.  The First District per curiam affirmed without opinion.  *Suda v. State*, 36 So.3d 90 (Fla. 1st DCA April 6, 2010) (Table).

On February 9, 2009, Petitioner filed the instant petition. Doc. 1.  Respondent moved to dismiss the petition as time-barred, arguing that Petitioner's *pro se* postconviction motion did not toll the federal limitations period because the state court

denied it as unauthorized.  Doc. 16.   This Court concluded that the petition was timely, denied the motion to dismiss, and denied Respondent's motion for reconsideration and for leave to take an interlocutory appeal.  Docs. 25, 26, 31.[3]

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*.  at

---

[3]Respondent objects to the Court's determination that the Petition is timely.  Doc. 38.

1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Respondent contends that all claims asserted in Petitioner's *pro se* Rule 3.850 postconviction motions are unexhausted because they were denied by the state court pursuant to the "represented *pro se* nullity rule." Doc. 38.

In denying Respondent's motion to dismiss the petition as untimely, this Court relied on the reasoning in *Hitchcock v. Sec'y, Dep't of Corr.*, 2010 WL 28207, at **4-5 (11th Cir. Jan. 7, 2010) (unpublished)[4], which was decided after Respondent filed the motion to dismiss. In *Hitchcock*, the Eleventh Circuit held that a federal district court should not treat as a nullity a *pro se* motion for postconviction relief filed in Florida's First District while a petitioner is represented by counsel, because no rule, internal operating procedure, or First District precedent indicated that a *pro se* filing on postconviction review would not be considered on the merits. The Eleventh Circuit considered the issue in the context of determining whether a habeas petitioner had fully exhausted a claim filed in a *pro se* motion for rehearing in the state appellate court, when petitioner had been represented by counsel in the appeal. The First DCA denied the rehearing motion without comment, citing a Fourth DCA case which held that the court had the discretion,

---

[4]Pursuant to 11th Cir. R. 36-2, unpublished opinions of the Eleventh Circuit are not considered binding precedent, but are persuasive authority.

in a direct criminal appeal, to reject an appellant's *pro se* filing. *Id.* at **1. The Court in
*Hitchcock* noted that "[n]ot *all* claims that are procedurally barred in state court . . . are
precluded from federal review. In order for a claim to be procedurally defaulted in federal
court, the state court rule of procedure barring state court review must be both
'independent of the federal question and adequate to support the [state-court]
judgment.'" *Id.* at **2 (quoting *Cone v. Bell*, ___ U.S. ___, 129 S.Ct. 1769, 1780 (2009)).
To be considered "'adequate'" to bar federal habeas review, the state procedural rule
must be "'firmly established and regularly followed,'" and the application of the
procedural bar must be "'faithfully and regularly applied, and must not be manifestly
unfair in its treatment of a petitioner's federal constitutional claim.'" *Id.* (citations and
internal quotations omitted). The Court determined that the First DCA's refusal to permit
the *pro se* filing of Hitchcock's federal claims on postconviction review (which his
counsel had omitted from the appeal) "satisfied none of the requirements for an
'adequate' or 'independent' state ground of decision," because no state procedural rule,
internal operating procedure, or published DCA opinion forbade the filing of a *pro se*
claim under the circumstances presented. *Id. at **3.*

Respondent does not cite *Hitchcock* in the Response. *See* Doc. 38. Respondent
cites state cases that this Court previously distinguished as factually inapposite to the
instant circumstances. For instance, in *Muccio v. State*, 949 So. 2d 376 (Fla. 4th DCA
2007), in contrast to the instant case, the amended postconviction motion which was
deemed a "nullity" was filed *after* the court had appointed counsel to represent the
movant on his initial *pro se* Rule 3.850 motion. In *Murray v. State*, 909 So. 2d 998 (Fla.
2nd DCA 2005), in contrast to the instant case, the motion at issue was ambiguous as to

the relief sought and was filed within 30 days of sentencing, while the movant was still

represented by appointed trial counsel.

In this case, although the state postconviction court stated that Petitioner had

been represented by counsel at all times, Petitioner's *pro se* postconviction motion was

filed almost a year after his direct appeal concluded, and almost two years after there

had been any activity in his case at the trial court level.   *See* App. ex. A.  Petitioner's *pro*

*se* postconviction motion was filed four months before the counseled motion, and the

motions proceeded on separate tracks through decision and appeal.  *Id*.  Further,

Petitioner's *pro se* motion asserted eight grounds of ineffective assistance of counsel

that for obvious reasons were not raised in the postconviction motion filed by that same

counsel.  Florida courts have recognized that the proscription against "hybrid

representation" does not preclude consideration of a *pro se* motion when the grounds for

the motion reflect an adversarial relationship between the defendant and his counsel.

*See Bermudez v. State*, 901 so.2d 981, 984 (Fla. 4th DCA 2005) (citing *Peterson v.*

*State*, 881 So.2d 1129 (Fla. 4th DCA 2004)).

Under the circumstances of this case, the Court is persuaded that Petitioner's

claims raised in his *pro se* postconviction motion are not foreclosed from federal habeas

review on the basis of the state court's "represented *pro se* nullity rule."  *See Hitchcock*,

2010 WL 28207.  As to whether Petitioner's claims might be foreclosed from review as

unexhausted on the basis of other applicable rules, the Court will address each such

claim in turn below.

## <u>Section 2254 Standard of Review</u>

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's

application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or

unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291
(citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely
addressed whether under the "unreasonable application" test a federal habeas court
"looks exclusively to the objective reasonableness of the state court's ultimate
conclusion or must also consider the method by which the state court arrives at its
conclusion." *Id*. at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002)
(summarizing the emerging circuit split)). The Eleventh Circuit concluded that district
courts must apply the plain language of § 2254(d) and answer the "precise question"
raised in a claim based on the state court's ultimate legal conclusion, and should not
"evaluate or rely upon the correctness of the state court's process of reasoning." *Id*. at
1291. In short, the court stated, "the statutory language focuses on the result, not on the
reasoning that led to the result."  *Id.*

     In light of *Gill,* the "unreasonable determination of facts" standard plays a limited
role in habeas review because the district court considers the reasonableness of the trial
court's fact finding only to the extent that the state court's ultimate conclusion relied on it.
*Id*. at 1292. A federal habeas court can consider the full record before it to answer "the
only question that matters[:]" whether the state court's decision was objectively
unreasonable.  *Gill*, 133 F.3d at 1290.

     The Second Amended Petition asserts claims enumerated in 15 separate
grounds.  Doc. 21.  Petitioner's grounds overlap considerably, and there is repetition of
claims due to the multiple postconviction proceedings in state court.  For clarity of
analysis, the Court discusses related and overlapping claims together.

## Ineffective Assistance of Counsel

Petitioner's claims 1, 2, 3, and 11 assert that his trial counsel rendered ineffective assistance in several respects.  Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy."  *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc).  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]."  *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate

choice between course A, course B, and so on.  The lawyer's strategy was
course A.  And [the Court's] inquiry is limited to whether this strategy, that
is, course A, might have been a reasonable one.

*Id.*

To show prejudice, a defendant must show more than simply that counsel's

unreasonable conduct might have had "some conceivable effect on the outcome of the

proceeding." *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a

"reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id*. at 694.  A "reasonable probability is defined

as a probability sufficient to undermine confidence in the outcome." *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel

claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is

a difficult one. *Harrington* 131 S.Ct. at 786.  The standard is not whether an error was

committed, but whether the state court decision is contrary to or an unreasonable

application of federal law that has been clearly established by decisions of the Supreme

Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not

enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal

law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785

(quotation marks omitted).  And "even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on

the merits by the state courts, a federal habeas court "must determine what arguments

or theories supported or, [if none were stated], could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree

that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### Claim 1: Counsel's failure to challenge the testimony of Justin Wainwright

Petitioner contends that Wainwright testified that he viewed the contents of a package of MDMA that Petitioner delivered to Hardin on April 27, 2001, at apartment 204, University Apartments, in Tallahassee. Petitioner asserts that Wainwright's testimony bolstered the credibility of Hardin, the "star witness," but that Wainwright's testimony was in conflict with Hardin's since Hardin testified that Wainwright was not present when the package was opened.

In addressing this claim on postconviction review, the state court held as follows:

Defendant first alleges defense attorney John Weinberg provided

ineffective assistance of counsel for failure to challenge State witness Justin Wainwright's testimony that he observed Defendant with drugs. Defendant claims Justin's testimony conflicted with other testimony because Justin said he saw Defendant open the package of drugs upstairs, while Defendant claims other witnesses' testimony placed Justin downstairs, with Blake Hardin and Defendant the only ones who went upstairs. Defendant claims that if counsel had exposed the inconsistencies in Justin's testimony, the outcome of the trial would have been different.

This claim is without merit. The record shows no such inconsistencies, or at least inconsistencies so minor that counsel "exposing" them would have had no bearing on the outcome of the trial. The testimony of Blake Hardin, Daniel Middlebrooks and Justin Wainwright was substantially similar: they all described Defendant arriving at the apartment bringing in a package from his car that everyone knew contained drugs and the package containing MDMA pills being opened in the apartment. [Ex. H 77-83, 144–151, 341–345]

Justin's testimony was not necessarily inconsistent with the others' testimony; he merely made a general statement that the package was opened in the apartment, admitted he did not remember who opened the package, and stated he left shortly thereafter. [Ex. H 343.] Whether someone was upstairs or downstairs is utterly irrelevant. Defendant shows neither deficient performance nor prejudice as required by *Strickland*. Ground 1 is denied.

App. ex. V. at 216-17.

The claim in the instant federal petition is vague and conclusory as to how counsel performed deficiently.  *See* Doc. 21.  Petitioner elaborates on this claim in his reply to Respondent's response, Doc. 45.  Petitioner reiterates his argument that there were inconsistencies in the witnesses' testimony regarding whether Wainwright was present when the package was opened. But the state court rejected this same argument because Wainwright's testimony was that the package was opened in the apartment, he did not remember who opened it, he saw Ecstasy in the package, and then he left, and such testimony was not necessarily inconsistent with the other witnesses.  App. ex. H at 343.

"The decision as to whether to cross-examine a witness is a tactical one well

within the discretion of a defense attorney.... Absent a showing of a single specific

instance where cross-examination arguably could have affected the outcome of either

the guilt or sentencing phase of the trial, a [petitioner] is unable to show prejudice

necessary to satisfy the second prong of *Strickland*." *Fugate v. Head*, 261 F.3d 1206,

1219 (11th Cir.2001).  In this case, counsel did cross-examine Wainwright regarding his

identification of the package, and the fact that Wainwright testified that the only persons

present were himself, Hardin, and Petitioner.  *Id*. at 345-67.  Counsel attempted to elicit

testimony from Wainwright that he was testifying for the government in order to try to

protect his Navy career, but the court sustained the state's objection to the line of

questioning.  *Id*. On this record, Petitioner has failed to establish that the state court's

decision rejecting this ineffective-assistance claim on both the deficient performance and

prejudice prongs of *Strickland* reflects an unreasonable determination of the facts, or

was contrary to, or an unreasonable application of, Federal law.

### Claim 2: Counsel's failure to impeach or correct "perjured" testimony

Petitioner contends that counsel rendered ineffective assistance by failing to

impeach and correct "perjured" testimony presented by the state through FDLE Officer

David  Odom.  Petitioner contends that  Odom "falsely" testified regarding a fingerprint

report.  Again, this claim is wholly vague and conclusory as to how counsel performed

deficiently.  *See* Doc. 21.

This claim stems from  Odom's testimony at trial that the bags in which the MDMA

was packaged were processed for fingerprints and came back negative; there were "no

prints on the bags."  He testified that it was not unusual not to find fingerprints on plastic

bags.   Odom confirmed on cross-examination that Petitioner's prints were not recovered

from any bags.  App. ex. H at 256-57, 271.  Petitioner asserts in his Reply that this

testimony was false because a report subsequently obtained from FDLE stated that

"latent prints of value for identification purposes were developed and detected" on two

exhibits.  Doc. 45 at 7.

The state court considered this claim on postconviction review both in the context

of a *Brady*[5] claim raised by counsel in the represented Rule 3.850 motion and in the

context of the claims in Petitioner's *pro se* motion.  In the represented motion,

Petitioner's counsel argued that an FDLE report obtained from the state's file on Hardin

indicated that four latent prints were found, but they did not match Hardin's, and two

other prints could not be conclusively compared with Hardin's.  The report conclusively

established that the prints were not those of Tarek Beckford, an associate of

Petitioner's.  Another report stated that four prints were compared with Petitioner's and

were not identified as his.  *See* App. ex. O, at 64 (10/16/01 FDLE report), 96 (9/26/01

FDLE report).

In rejecting counsel's *Brady* claim, the state court determined that the reports

were not *Brady* material because they were neither exculpatory nor impeaching.  The

court observed that the report as to the presence of Hardin's prints was inconclusive,

and the fact that Petitioner's prints were not found did not exonerate him because other

persons had handled the bags.  Further, counsel confirmed on cross-examination of

Odom that Petitioner's fingerprints were not recovered.  The court concluded:

---

[5]*Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Brady held that "the suppression by
the prosecution of evidence favorable to an accused upon request violates due process
where the evidence is material either to guilt or to punishment, irrespective of the good
faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

To establish a *Brady* violation, a defendant must show: (1) that the evidence is favorable to the accused because it is either exculpatory or impeaching; (2) that the evidence was suppressed by the State, either willfully or inadvertently; and (3) that prejudice ensued. *Elledge v. State*, 911 So. 2d 57, 63 (Fla. 2005). As described above, the two FDLE reports do not fall under *Brady* because they were neither exculpatory nor impeaching and their alleged absence did not prejudice Defendant. The reports were not material, as there is no reasonable probability that the outcome of the trial would have been affected by admission of this evidence. *Gorham v. State*, 597 So. 2d 782, 785 (Fla. 1992). Ground 2 is denied.

App. ex. U.

The state court rejected this ineffective-assistance claim in Petitioner's *pro se* motion as follows:

Defendant alleges counsel was ineffective for failing to impeach State witness Officer David Odom when he knowingly gave perjured testimony regarding the fingerprint results. Defendant also alleges a *Giglio*[6] violation because the State elicited this supposedly false testimony. To establish a *Giglio* violation, it must be shown that (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material. *Guzman v. State*, 868 So. 2d 498, 505 (Fla. 2003). A statement is material if there is any reasonable likelihood that it could have affected the judgment of the jury. *Id.* at 506.

This claim is remarkably similar to the fingerprint-related claims in Ground 2 of the 3.850 motion filed by Defendant's counsel . . . Defendant does not make a valid *Giglio* claim because the testimony regarding the fingerprint reports was not material, as discussed in Ground 2 of the Court's 2/9/07 order and the sections of the instant order on Grounds 6 and 7 above. . . . Ground 8 is denied.

App. ex. V at 222.

In his Reply, Petitioner focuses on the merits of his *Giglio* claim.  *See* Doc. 45.

--------------------------------------------

[6]*Giglio v. United States*, 405 U.S.150, 154-55 (1972).  A *Giglio* violation occurs where the undisclosed *Brady* evidence reveals that the prosecution knowingly made false statements or introduced or allowed trial testimony that it knew or should have known was false. *Giglio*, 405 U.S.  at 153.

As to his ineffective-assistance claim, Petitioner argues that "[c]ounsel clearly elicited known false testimony and fails to correct it.  He is just as culpable as the state attorney, in the knowing presentation of false testimony."  *Id*. at 45.  Petitioner points to nothing in the record that would support a conclusion that his trial counsel was aware of this allegedly "false" testimony at the time of trial.  The basis for counsel's argument in the Rule 3.850 motion was that the state had failed to disclose the FDLE reports.  Counsel cannot be said to have performed deficiently for failing to challenge "false" testimony when the basis for the falsity was unknown.

Further, Petitioner has not shown that the state court unreasonably determined that the allegedly false testimony was not material under *Giglio*.  "To establish a Giglio claim, a habeas petitioner must prove: '(1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material[.].'"  *Guzman v. Secretary*, 663 F.3d 1336, 1348 (11th Cir. 2011) (quoting *Ford v. Hall*, 546 F.3d 1326, 1332 (11th Cir.2008) (internal quotation marks omitted). For *Giglio* violations, the defendant is entitled to a new trial "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Guzman*, 663 F.3d at 1348.  Odom testified truthfully that Petitioner's prints were not found on the bags.  Even if  Odom was incorrect that *no* fingerprints were found on any bags, the evidence cited by Petitioner shows, at best, that prints were found but they were not Petitioner's and could not be conclusively identified with Hardin.  Hardin had already admitted to handling the bags.  Thus, this evidence was neither exculpatory nor impeaching.  Petitioner has failed to show that there is any reasonable likelihood that

Odom's "false" testimony could have affected the judgment.  Accordingly, he also has

failed to show under *Strickland* that there is a reasonable probability that the outcome of

the trial would have been different if counsel had asserted a *Giglio* objection to Odom's

testimony.  The Court cannot conclude that the state court's decision rejecting this

ineffective-assistance claim reflects an unreasonable determination of the facts, or was

contrary to, or an unreasonable application of, Federal law.

### Claim 3: Failure to Object to State's Argument of Facts Not in Evidence

Petitioner contends that the State mislead the jury with facts not in evidence, and

that counsel was ineffective for failing to object and move for a mistrial.   The basis for

this claim is Petitioner's previous argument regarding fingerprint evidence.  In closing

argument the prosecutor referenced the absence of prints on the bags and suggested

that the absence of prints did not – as Petitioner's counsel had suggested – exculpate

Petitioner.  The prosecutor commented "So that means, now, that the object got from his

car into the house by themselves.  They just kind of materialized, just, poof, from there

to there and nobody handled it."   App. ex. H at 553.  Petitioner characterizes these

remarks as reflecting "ill will" and "malicious."  Doc. 45.

In rejecting this claim on postconviction review, the state court held:

> Defendant alleges the State mislead the jury by arguing facts not in
> evidence and counsel was ineffective for failing to object and move for a
> mistrial when the State argued these facts not in evidence. This claim is
> entirely based on the meritless allegations in [the previous ground] and is
> therefore denied on the same basis.

App. ex. V at 223.

The Prosecutor's comments plainly related to the facts in evidence, and as

explained above the Court cannot conclude that the state court unreasonably rejected Petitioner's *Giglio* claim regarding  Odom's testimony.  The record does not provide a basis for concluding that counsel could have asserted a meritorious objection to the prosecutor's comments, or that Petitioner suffered any prejudice as a result of the cited comment.  On this record, Petitioner has failed to establish that the state court's decision rejecting this ineffective-assistance claim reflects an unreasonable determination of the facts or was contrary to, or an unreasonable application of, Federal law.

### *Claims Four, Eight, Thirteen: Prosecutorial Misconduct, Brady, Giglio violations*

Petitioner states that "counsel raised [29] facts pertaining to newly discovered evidence, fraud upon the court, *Giglio* violations, and *Brady* violations."  Doc. 21. Petitioner notes that the state court on postconviction review consolidated his claims into two grounds (1) prosecutorial misconduct because the State concealed the motives of Hardin and Wainwright in testifying against Petitioner, and those witnesses received lenient treatment; (2) a *Brady* violation because the state failed to disclose the FDLE fingerprint reports.  The *Brady* fingerprint-evidence claim was discussed above in connection with Petitioner's second ineffective-assistance claim, and the merits of that claim will be addressed below.

Petitioner contends that the state court misapplied *Giglio* in rejecting his claim regarding Hardin and Wainwright's testimony.  Doc. 45 at 22-28.  Related claims stemming from Hardin's testimony are also asserted in Claims 8 and 13 of the Petition. doc. 21.

In rejecting this claim, the state court explained as follows:

Defendant alleges prosecutorial misconduct because the conviction was obtained by a fraud perpetuated by the State upon the Court and jury. Defendant claims the State concealed the motives of its witnesses, Blake Hardin and Justin Wainwright, in testifying against the Defendant, and that the witnesses were subsequently treated leniently by the State as a result of their testimony. Defendant alleges that if the jury knew of the promises made to the witnesses, it would have affected their determination of credibility of the witnesses' testimony.

This claim of prosecutorial misconduct could and should have been raised on direct appeal, and therefore is not a cognizable claim for purposes of rule 3.850. *Spencer v. State*, 842 So. 2d 52, 60 (Fla. 2003). However, even if this claim was not procedurally barred, this Court finds the claim is without merit. There is no indication in the record that the witnesses were promised anything by the State or that they were treated unduly leniently.

Blake Hardin testified at Defendant's trial while charges were pending against him in a case stemming from the same drug bust. Hardin testified that on the night of the drug bust, he was on the premises where the drugs were seized, that on this occasion Defendant had brought 1,000 ecstacy pills up from Miami for Hardin to sell, and that he had sold pills for Defendant in the past. [Ex. H 64-95.] Assistant State Attorney Jack Poitinger elicited testimony from Hardin that he had received no promises of leniency from the State in exchange for testifying at Defendant's trial and that he fully expected to go to prison despite his testimony in this case. [Ex. H 93–95.]

Defendant alleges the State misled the jury about Hardin's motives in testifying against Defendant based on the fact that Hardin later entered a plea, served no more time in jail after Defendant's trial, and was spared a felony conviction because adjudication was withheld. As shown in the transcript of Hardin's plea and sentencing attached to Defendant's motion, on 11/18/04, Hardin entered a plea to the lesser offense of possession of MDMA with intent to sell and was sentenced to 11 months and 29 days in the Leon County Jail, with credit for 11 months and 29 days served, with a condition of 72 months probation, adjudication withheld. [Ex. V 43-48.] This was not lenient treatment. As the transcript shows, Hardin actually spent 502 days in jail in his case prior to his original sentencing. [Ex. V 45.] Because Hardin plead to a second degree felony, he faced up to a 15-year prison sentence if he violated probation. In fact, Hardin later violated his probation and is currently serving a four-year prison sentence. [Ex. V 191–97.]  Also, Hardin indicated during his plea colloquy that no one promised anything in exchange for his plea. [Ex. V 46.]

Justin Wainwright testified at trial that he was at the scene when
Defendant arrived prior to the drug bust, but as soon as he saw that the
package Defendant was carrying contained ecstasy pills, he left because
he did not feel safe. [Ex. H 341–44.] He admitted he had sold ecstasy with
Blake Hardin in the past. [Ex. H 345.] Wainwright also testified he was not
arrested for any of his MDMA-related activities with Blake Hardin, but
reached an understanding with the State that he would not be charged.
[Ex. H 347.]

Defendant's motion asserts, as defense counsel asserted at length
to the Court and the State during the trial, that Wainwright testified against
Defendant in exchange for the State not charging him regarding alleged
past drug activities, and that the benefit for Wainwright in not being
charged was that if the Navy was notified of these activities, it would
jeopardize his standing as a Navy SEAL. [Ex. H 325–70.]

Counsel attempted to impeach Wainwright in this manner, but the
Court ruled there was no logical or relevant connection between his
testimony and any potential bias regarding the Navy, and the impeachment
testimony was proffered. [Ex. H 347–70.] First of all, the record shows the
State was not hiding the fact that Wainwright had reached an
understanding he would not be charged, because Wainwright testified at
trial as to that very fact. [Ex. H 347.] Secondly, as the Court correctly ruled
when the same issue was discussed at trial, Defendant's vague and
conclusory allegations do not provide any basis for the claim that
Wainwright was treated with leniency in exchange for his testimony at
Defendant's trial. [Ex. H 355–363.] Ground 1 is denied.

App. ex. V 97–99.

The fact that Hardin subsequently pleaded to a lesser offense and received a

correspondingly shorter sentence than Petitioner's does not establish that he had

negotiated a deal prior to Petitioner's trial in exchange for his testimony, and then lied

about such an agreement at trial.  Petitioner accuses the prosecutor of "surreptitiously"

reducing Hardin's charges, but Petitioner's assertions are wholly conclusional and such

conclusional assertions do not provide a basis for federal habeas relief.  On this record,

Petitioner failed to establish the requisite element of a *Giglio* claim that the challenged

testimony was false or perjured.

In his motion for reconsideration to the state postconviction court, Petitioner submitted letters from Hardin's probation violation proceedings in June 2006, during the pendency of Petitioner's Rule 3.850 motion.  Petitioner argued that the letters contradict Hardin's testimony that he was not offered an inducement for testifying against Petitioner.  App. exh. V at 311.  The state court denied rehearing.  App. ex. V at 336.  Respondent contends that this claim is procedurally defaulted because it was not presented to the state court in a manner in which the merits would have been considered.  Doc. 38.

Under Florida law, a new ground cannot be raised in a motion for rehearing after the summary denial of a rule 3.850 motion.  *Cave v. State*, 899 So.2d 1042, 1052 (Fla. 2005) (claim asserting newly discovered evidence may not be raised for first time in a motion for rehearing following denial of relief on a Rule 3.850 motion); *Reid v. State*, 745 So.2d 363 (Fla. 4th DCA 1999) (motion for rehearing which, in effect, is an amended motion filed after the court already denied the initial motion is subject to being denied as successive).   Accordingly, the Court agrees that this claim was not properly exhausted in the state court in Petitioner's first Rule 3.850 motion.

Petitioner also attempted to raise this claim in another Rule 3.850 motion filed in January/February 2008.  App. exh. JJ.  The state court denied the claim as successive.  *Id*. at 282-83.  Respondent contends that the claim is also procedurally barred to the extent that Petitioner seeks review of this decision.

Rule 3.850(f) of the Florida Rules of Criminal Procedure provides:

 **(f) Successive Motions.** A second or successive motion may be
dismissed if the judge finds that it fails to allege new or different grounds
for relief and the prior determination was on the merits or, if new and
different grounds are alleged, the judge finds that the failure of the movant
or the attorney to assert those grounds in a prior motion constituted an
abuse of the procedure governed by these rules. FLA. R. CRIM. P. 3.850(f)
(bold in original).

The Court agrees that this claim was not properly exhausted in the state courts in

Petitioner's successive January 2008 Rule 3.850 motion. Because Petitioner would be

barred from returning to state court with this claim, it is procedurally defaulted.  Petitioner

has made no showing of cause and prejudice for the procedural default, nor does the

record present any basis for concluding that a fundamental miscarriage of justice would

result if the claim were not considered.

Even if this claim were properly exhausted, Petitioner has not established the

existence of a *Giglio* violation with respect to Hardin's testimony.  In the letters, Hardin

seeks leniency in sentencing for his probation violation, and describes his cooperation

with law enforcement.  Hardin states that he testified against Petitioner, and "after this"

he was told that he needed to serve some time in the county jail, and his lawyer told him

that he had worked out a deal with the state attorney where he would serve a few

months in jail and "be through with it."  App. ex. V at 330-31 (excerpt from letter); *see*

App. ex. JJ at 234-48 (complete copy of letter).  Hardin states that he served 13 months

in the Leon County jail from July 2002 until August 2003 "awaiting the so-called deal,"

and then bonded out on pretrial release.  Petitioner's second trial was conducted in

January 2004. Hardin's letter states that after a year on pretrial release, his attorney

contacted him and told him that the previous state attorney had retired, a new state

attorney was assigned to his case, and that he "couldn't get the new state attorney to agree to the same time served plea offer as before."  Hardin returned to jail in July 2004. App. exh. JJ at 237.  The record also includes a copy of an email message from the new state attorney assigned to Hardin's case, Ron Flury, to Hardin's lawyer, Don Pumphrey, dated November 15, 2004 – after Petitioner's trial – in which a plea offer was made that would permit Hardin to plea to a lesser included offense.  App. exh. JJ at 230.

Hardin's letter and the email provide support for a conclusion that at the time of Petitioner's second trial in January 2004, Hardin's counsel may have been pursuing a plea agreement, but there is no evidence that a final plea offer was made to Hardin until November 2004.  This information is not inconsistent with Hardin's trial testimony, in which Hardin stated that he had not been offered a specific sentence, that he expected to go to prison, but that he also hoped to avoid a felony conviction.  Petitioner's counsel conducted a thorough cross-examination of Hardin, during which Hardin conceded that he wished to protect other persons from prosecution, including his sister and his friends, and avoid a felony conviction, and therefore factors bearing on his personal interest in avoiding felony prosecution and bias in testifying were exposed to the jury.  *See* App. exh. H at 50-129.   On this record, Hardin's letters do not establish that his trial testimony was false, and therefore the first element of a *Giglio* claim is not satisfied.

As to Wainwright, the record establishes that he testified on cross-examination that he had not been charged in connection with his drug activity with Hardin, and that he had reached an understanding that he would not be charged.   Petitioner suggests that Wainwright testified in exchange for an agreement that the Navy would not be

contacted about his drug activity, and that the prosecutor misrepresented to the court that Wainwright's Navy command had been contacted and informed about Wainwright's involvement in the case.  Petitioner contends that an affidavit from a private investigator obtained by Petitioner's counsel showed that no such contact was made.  Doc. 45 at 27; App. ex.O (counseled postconviction motion attaching affidavit).  The affidavit reflects only that the investigator was unable to confirm whether a contact had been made.  *See id*.  Moreover, the trial court concluded that evidence regarding any effect of Wainwright's testimony on his Navy career, as opposed to possible criminal penalties, was too collateral and inadmissible.  *See* App. ex. H at 358-60.   Petitioner has shown no error in this ruling.  Wainwright's self-interest in testifying was made clear to the jury. On this record, Petitioner has failed to show that Wainwright's testimony was false or that some other potential bias in his testimony was concealed.

In sum, the Court cannot conclude that the state-court's rejection of these claims reflects an unreasonable determination of the facts or was contrary to, or an unreasonable application of, Federal law.

### Claims Five, Six, Seven, Fourteen: Brady and Giglio violations regarding FDLE fingerprint reports

Petitioner contends that the state failed to disclose material exculpatory evidence in the form of the FDLE reports described above, which Petitioner contends contradict Odom's testimony.  These claims were addressed by the state court as Ground 2 of his counseled postconviction motion and in a supplement to that motion.  *See* App. ex. O at 1-96 (motion, supplement, and exhibits), 97-102 (order denying motion).

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the

prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). Three elements establish a *Brady* violation: (1) the evidence must be favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice. *Banks v. Dretke*, 540 U.S. 668, 691 (2004).  Evidence "favorable to an accused" includes both impeachment evidence and exculpatory evidence.  *United States v. Bagley*, 473 U.S. 667, 676  (1985).  Evidence is material if it creates "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682 (citing *Strickland v. Washington,* 466 U.S. 694, 668 (1984)); *see also Brown v. Head*, 272 F.3d 1308, 1316 (11th Cir. 2001) ("The prejudice component of an ineffective assistance claim and the materiality component of a *Brady* claim both require the same thing ... a reasonable probability of a different result in the proceeding.").

For the reasons explained above in the discussion of Petitioner's ineffective-assistance claim regarding Odom's testimony and the FDLE reports, Petitioner has not shown that the FDLE reports were material under *Brady*.   The reports showed, at best, that fingerprints were found on the bags that could not be identified with Beckford or Petitioner, or conclusively identified with Hardin.  There was evidence that at least one other person – Hardin – had handled he bags.  There was testimony that it was not

unusual not to find fingerprints on plastic bags, and thus these FDLE reports were not exculpatory as to Petitioner or impeaching as to Hardin.  Petitioner has also failed to show under *Giglio* that there is any reasonable likelihood that the outcome of the proceeding would have been different but for Odom's testimony that there were "no" fingerprints on the bags.  The state court's rejection of these claims does not reflect an unreasonable determination of the facts, nor was it contrary to, or an unreasonable application of, Federal law.

**Claim Nine : Notice of Sentencing Enhancement**

Petitioner's indictment charged that he "did unlawfully and knowingly sell, purchase, manufacture, deliver, or was knowingly in actual or constructive possession of 200 grams or more of [MDMA] . . . contrary to Section 893.135, Florida Statutes."  *See* App. exh. BB at 46.  Petitioner contends that his indictment did not put him on notice of a sentencing enhancement because it did not cite "the statute, subsection, paragraph, subparagraph, and the sub-subparagraph of the enhancement."  Doc. 21.   The state court rejected this claim on postconviction review because there is only one subsection of the cited statute that applied to the trafficking of MDMA, section 893.135, and the indictment included the precise language from the statute.  The court concluded that the indictment therefore was not confusing or prejudicial.  App. exh. BB at 18-19. The statute provides for a mandatory minimum term of imprisonment of 7 years and a $100,000 fine for offenses involving more than 200, but less than 400 grams of MDMA.  *See* Fla. Stat. § 893.135(1)(j)(2)(b) (2001).

Initially, as Respondent points out, there is nothing in the record that reflects that

Petitioner raised this in the state court as anything other than a state-law claim, and therefore this claim is unexhausted for federal habeas purposes.  *See* App. exh. BB.

Even if this claim was properly exhausted, Petitioner has not shown that he is entitled to relief.  Under the Sixth Amendment the Petitioner has a right to reasonable notice of the charge against him. *In re Oliver*, 333 U.S. 257 (1948) (A person's right to reasonable notice of the charge against him is applied to the states through the Fourteenth Amendment.)  However, the sufficiency of a state indictment or information is not a matter for federal habeas corpus relief unless it can be shown that the indictment or information is so defective that the convicting court had no jurisdiction. *Murphy v. Beto*, 416 F.2d 98 (5th Cir.1969); *Branch v. Estelle*, 631 F.2d 1229 (5th Cir.1980); *DeBenedictis v. Wainwright*, 517 F.Supp. 1033, 1036 (S.D. Fla. 1981).  In this case, the information was determined to be sufficient under state law because there was only one subparagraph of the statute cited in the indictment that applied to the facts alleged.  A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no federal constitutional question is presented.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### Claims Ten and Eleven: Brady Violation and Ineffective Assistance– Lab Report

Petitioner contends that the prosecutor withheld a 200-page laboratory report that would have negated the element of the offense that the MDMA weighed more than 200 grams, because it shows that the substance weighed 231 grams but was only tested for

the "presence" of MDMA within the mixture, rather than determining exactly how much pure MDMA was contained in the pills.  Petitioner also contends that his counsel rendered ineffective assistance by failing to hire an expert to determine the amount of pure MDMA in the pills, and by failing to move to dismiss the indictment and for a judgment of acquittal on this basis.  Doc. 21.

Petitioner asserted this claim in state court in his January 2008 Rule 3.850 motion.  *See* App. exh. JJ.  In rejecting this claim on postconviction review, the court observed that the claim was based on a misunderstanding of the state law, because at the time of Petitioner's offense the statute applied to "any combination of or any mixture containing any" MDMA, and there was no requirement that the state prove the amount of "pure" MDMA contained within the mixture, and therefore the report was not exculpatory. App. exh. JJ at 278-80 (citing Fla. Stat. § 893.135(1)(j)(1) (2001))[7].  The court observed that Petitioner had confused changes in the law with respect to hyrdocodone that did not apply to MDMA.  *Id*.  The court determined that counsel did not provide ineffective

---

[7]The statute applicable to Petitioner states:
(j)1. Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 10 grams or more of any of the following substances described in s. 893.03(1)(a) or (c):

a. 3,4-Methylenedioxymethamphetamine (MDMA); . . .

*individually or in any combination of or any mixture containing any substance listed in sub-subparagraphs a.-n.*, commits a felony of the first degree, which felony shall be known as "trafficking in Phenethylamines," punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 893.135 (emphasis added).

assistance since such motions would have been denied because they were not supported by the law.  The court alternatively denied the claims as untimely and successive because Petitioner's two-year limitations period under Rule 3.850 had expired on June 17, 2007, and Petitioner failed to assert the claims in one of his earlier Rule 3.850 motions.  *Id*.

"When a state court addresses both the independent state procedural ground and the merits of the federal constitutional claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim."  *Cloud v. DeLoach*  147 Fed.Appx. 817, 818-819 (11th Cir. 2005) (citing *Marek v. Singletary*, 62 F.3d 1295, 1301-02 (11th Cir. 1995); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.1994) ("However, as here, where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim.")).  Petitioner has not demonstrated cause and prejudice for the procedural default, nor does the record suggest that a fundamental miscarriage of justice would occur if the Court does not reach the merits of these claims.  Further, even if these claims were not procedurally defaulted, Petitioner has failed to establish that the state court's assessment of the merits of the claim on state-law grounds was contrary to, or an unreasonable determination of, Federal law for purposes of federal habeas review.

### Claim Twelve: Jury Instructions

Petitioner contends that the trial court "committed fundamental error when it failed to instruct completely and intelligently on the Florida Statute."  Doc. 21.  Petitioner

contends that the court's jury instructions should have required the jury to make a specific finding on the quantity of pure MDMA.  The state court rejected this claim on the merits as stemming from a misapprehension of the state law, as discussed above.  The court also rejected the claim as one that should have been raised on direct appeal and was not properly raised in a Rule 3.850 motion, and concluded that to the extent Petitioner sought to raise the claim as one of ineffective-assistance, it was untimely and successive.  App. exh. JJ at 280-81.

Because the state addressed both the independent state procedural grounds and the merits of the claim, the Court concludes that the state procedural bar forecloses federal review of this claim.  Petitioner has not demonstrated cause and prejudice for the procedural default, nor does the record suggest that a fundamental miscarriage of justice would occur if the Court does not reach the merits of these claims.  Further, Petitioner has failed to establish that the state court's assessment of the merits of the claim on state-law grounds was contrary to, or an unreasonable determination of, Federal law for purposes of federal habeas review.

### Claim Fifteen: Brady violation regarding FDLE reports 5, 6, 7

Petitioner contends that the prosecutor committed a *Brady* violation by concealing "significant or exculpatory or impeaching material" in the form of "FDLE reports 5,6,7." Doc. 21.  Respondent contends that this claim is procedurally barred because Petitioner raised it in his January 2008 Rule 3.850 motion (supplemented in February 2008), which the state court rejected as successive.  *See* App. exh. JJ at 276-85.  The Court agrees that this successive claim is procedurally barred, and Petitioner has not demonstrated

cause and prejudice for the procedural default, nor does the record suggest that a fundamental miscarriage of justice would occur if the Court does not reach the merits of these claims.

Further, even if the claim was not procedurally defaulted, Petitioner has not established the existence of a *Brady* violation.  The Respondent has supplemented the record with documents reflecting that FDLE reports 5,6,7 were identified and provided to Petitioner's counsel during discovery.  App. exh. VV.  After Petitioner's conviction, his counsel sought to obtain the same reports by way of public records requests to the FDLE, but his requests appear to assume that the documents were laboratory reports. App. exh. JJ at 273-74.  The cited reports are not, however, laboratory reports; they are investigative reports of law enforcement personnel.   These reports set forth barebones investigative information regarding the arrest of Michael Oliver Sills, a witness at trial, and contacts with two residents of the apartment complex where the raid occurred. There is nothing in these barebones reports that could be described as exculpatory to Petitioner or impeaching to any witness.  *See* App. exh. VV.  Petitioner has failed to establish that the state court's rejection of this claim reflects an unreasonable determination of the facts, or  was contrary to or an unreasonable determination of Federal law.

For the foregoing reasons, the Petition should be denied.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (Doc. 21) be **DENIED**.

2. That a certificate of appealability be **DENIED.**

**IN CHAMBERS**  this 28th day of February 2012.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.